UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 24-40035 |
| ADAM J. ONDRAJKA, | Chapter 13 |
| Debtor. | Judge Thomas J. Tucker |
| _____/ | |
| JOHN M. HOFFMANN, | |
| Plaintiff, | |
| v. | Adv. No. 24-4004 |
| ADAM J. ONDRAJKA, and FLYBOYZ AVIATION, LLC, | |
| Defendants | |
| _____/ | |

**OPINION REGARDING PLAINTIFF'S MOTION FOR ABSTENTION**

**I. Introduction**

This adversary proceeding began after one of the two Defendants, Adam J. Ondrajka, filed a Chapter 13 bankruptcy case in this Court on January 3, 2024, and then immediately removed a pending state court lawsuit to this Court. That lawsuit had been pending in the state court for almost two and one half years, and was scheduled for a jury trial to be held on February 29, 2024. The Plaintiff has moved for this Court to abstain, based on the mandatory and permissive abstention provisions of 28 U.S.C. § 1334(c). For the reasons stated in this Opinion, the Court will abstain, and will remand the case back to the state court.

Before the Court is the motion filed by Plaintiff John M. Hoffman (the "Plaintiff" or "Hoffman") on February 2, 2024, entitled "Plaintiff's Motion for Abstention from Further

Proceedings" (Docket # 26, the "Motion"). On February 14, 2024, the Defendants filed a response objecting to the Motion.[1] The Court concludes that a hearing on the Motion is not necessary, and that the Motion should be granted.

## II. Background

### A. The state court lawsuit

On August 16, 2021, the Plaintiff Hoffman filed a complaint against the Defendants Adam J. Ondrajka ("Ondrajka" or the "Debtor") and Flyboyz Aviation LLC ("Flyboyz") (collectively, the "Defendants") in the state circuit court for Sanilac County, Michigan, commencing Case No. 21-39262-CZ (the "State Court Lawsuit").[2]

The complaint in the State Court Lawsuit alleged the following facts.

Hoffman is the owner of an airplane that "was disassembled when [he] obtained [it] in 2016[,]" and is also the owner of "parts, manuals, [a] logbook, [and] yellow tags from [his air]plane."[3] The "[D]efendant Ondrajka is an owner, employee, agent and/or representative of [the D]efendant Flyboyz."[4] The "[D]efendant Flyboyz is an airplane repair shop and [the D]efendant Ondrajka is a licensed airplane repair mechanic."[5] Sometime in 2017, Hoffman and Ondrajka agreed that Ondrajka would repair the engine of the airplane, paint various parts of the

---

[1] Docket # 29.

[2] A copy of the state court complaint is attached to the Motion as Exhibit A. (*See* Docket # 26-5 at pdf pp. 3-7.)

[3] Ex. A to Mot. (Docket # 26-5) at pdf p. 4 ¶¶ 5-7.

[4] *Id.* at ¶ 4.

[5] *Id.* at ¶ 8.

2

airplane, and otherwise reassemble and restore the airplane.  From 2017 through 2019, Ondrajka ordered parts for the airplane and performed various services on the airplane, and invoiced Hoffman for those services and for parts.  Hoffman promptly paid such invoices, and on November 18, 2017, "paid an advancement on [Ondrajka's] labor of 20 hours at $65.00 per hour."[6]  On October 23, 2018, Hoffman provided the Defendants with his credit card information so that Ondrajka could purchase additional parts to be used in reassembling and restoring the airplane.[7]  The Defendants would also "contact [Hoffman] as to parts that were need[ed] for the airplane which [Hoffman] would purchase . . . and have . . . delivered to [the D]efendants."[8]

On October 16, 2019, Hoffman paid Flyboyz $25,000.00 for "a complete new instrument panel."[9]  On August 7, 2020, Hoffman's son "emailed [the D]efendants inquiring as to the status of the restoration of [Hoffman's air]plane and if [the D]efendants had a proposed panel layout for the instrument panel."[10]  On August 8, 2020, the Defendants responded to Hoffman's son's email by stating that they did not have any money remaining "to order parts for the instrument panel" and "that some of the restoration work on the airplane [was] partially done."[11]  After this response, both Hoffman and his son repeatedly asked for an accounting "as to the money that was spent on the airplane and what amount of money remained from the $25,000 [Hoffman] sent to

---

[6] *See id.* at 4-5 ¶¶ 10-17, 19-21.

[7] *Id.* at 6 ¶ 19.

[8] *Id.* at ¶ 21.

[9] *Id.* at ¶ 20.

[10] *Id.* at ¶ 22.

[11] *Id.* at ¶ 23.

[the D]efendants for the instruments for the instrument panel" and for "the money and labor spent on the airplane."[12] Hoffman also requested that Ondrajka "return all the parts that came with the airplane as well as all of the parts that either [Hoffman] purchased or [the D]efendants allegedly purchased for the airplane as well as the 'yellow tags[.]'. . . the aircraft logbook[, and . . . all of the maintenance records for the airplane."[13] Despite Hoffman's repeated demands for an accounting and for the return of his personal property, the Defendants have failed to provide an accounting or to return his property.[14]

The complaint in the State Court Lawsuit stated that the state court had jurisdiction over the case because Hoffman sought "in part, an equitable order seeking the return of parts, manuals, logbook, [and] yellow tags" from Hoffman's airplane.[15]

The complaint did not explicitly allege any particular legal theories for relief. Rather, the complaint contained only a section entitled "General Allegations" in which Hoffman laid out in 33 numbered paragraphs the facts he alleged entitled him to relief, and then a prayer for relief which stated:

> WHEREFORE, [P]laintiff JOHN M. HOFFMAN, prays that this Court enter an[] order that [the D]efendant return all parts for the airplane, the aircraft and flight logbooks, manuals, yellow tags, all documentation to the airplane included previously yellow tags [the D]efendants took, and $25,000 that [the P]laintiff had paid to [the D]efendants, including costs and attorney fees so wrongfully

---

[12] *Id.* at 6-7 ¶¶ 23, 25-27.

[13] *Id.* at 7 ¶¶ 28-33.

[14] *Id.* at 7 ¶¶ 27-33.

[15] *Id.* at 4 ¶ 5.

4

incurred, and any other remedy this Court deems fair and just.[16]

The docket in the State Court Lawsuit[17] indicates that the Defendants filed an answer to the complaint on September 24, 2021,[18] and that, after almost two and one half years of litigation, the case was scheduled for a final settlement conference on February 26, 2024, and a jury trial on February 29, 2024.

### B. Ondrajka's bankruptcy filing and removal of the State Court Lawsuit

On January 3, 2024, Ondrajka filed a voluntary petition for relief under Chapter 13, commencing Case No. 24-40035, and then immediately filed a "Notice of Removal" of the State Court Lawsuit to this Court, thereby commencing this adversary proceeding.[19]

### C. Plaintiff's abstention motion

On February 2, 2023, Hoffman filed the Motion, arguing that this Court should abstain from hearing this proceeding under both the mandatory and permissive abstention provisions of 28 U.S.C. § 1334(c), and remand the case back to the state court.[20] In support of mandatory abstention, Hoffman argues that this adversary proceeding "is related to a case under title 11 and could not be commenced in a court of the United States absent this bankruptcy" and that this action "can be timely adjudicated in the state court, because it was scheduled "to go to trial on

---

[16] *Id.* at 8.

[17] A copy of the docket in the State Court Lawsuit is attached to the Motion as Ex. B. (*See* Docket # 26-5 at pdf pp. 10-26.)

[18] There is not a copy of the Defendants' answer to the state court complaint in the record in this adversary proceeding.

[19] Docket # 1 in Case No. 24-40035; Docket # 1 in Adv. No. 24-4004.

[20] *See* Mot. (Docket # 26) at 4 ¶¶ 11-12. The Court notes that, in the Motion, Hoffman erroneously cites the mandatory abstention provision of 28 U.S.C. § 1334(c)(2) as "11 U.S.C. 1334(d)."

5

February 29, 2024."[21] In support of permissive abstention, Hoffman argues that his "claims are contractual and arise under state law;" "[t]here is no jurisdictional basis for this adversary proceeding in the federal courts, other than 28 U.S.C. § 1334;" and "[a]llowing the state court to hear this matter will discourage forum shopping."[22]

On February 14, 2024, the Defendants filed a brief objecting to the Motion.[23] The Defendants argue that the Court should not abstain, because:

- the Debtor has a lien on at least some of the personal property that Hoffman demands that the Defendants return to him, which lien "is scheduled by the Debtor in his Schedule B at question 25, as a 'Garage keeper lien on Hoffmann aircraft records pursuant to MCL 259.205a'."[24]

- "the bankruptcy court is the only court with subject matter jurisdiction to decide whether an asset is property of a debtor's bankruptcy estate."[25]

- "the bankruptcy court has exclusive jurisdiction of all of the debtor's property, wherever located[,]" and "the asset listed in the Debtor's Schedule B, question 25" is property of the Debtor's bankruptcy estate."[26]

- this adversary proceeding concerns "the allowance or disallowance of claims against the bankruptcy estate" and is thus a core proceeding under 28 U.S.C. § 157(b)(2)(B).

- the action cannot be timely adjudicated in state court for the reason that the Bankruptcy Court is the only court with subject matter jurisdiction to decide whether

---

[21] *Id.* at ¶ 11.

[22] *Id.* at 4-5 ¶¶ 12-13. The Court notes that there are 2 paragraphs labeled "12." This citation is intended to include both of these paragraphs.

[23] Docket # 29.

[24] *See* Defs.' Br. in Resp. to Pl.'s Mot. (Docket # 29) at 4 ¶ II.B.

[25] *Id.*

[26] *Id.*

6

an asset is property of a debtor's bankruptcy estate."[27]

The Defendants argue further that permissive abstention is not appropriate because the factors courts consider in deciding whether to abstain weigh against abstention.[28] The Defendants list these factors in their brief, but they do not discuss how any of these factors apply to this case.

## III. Discussion

The Court concludes that both mandatory and permissive abstention apply, and that this Court should abstain and remand this case to the state court.

"28 U.S.C. § 1334(c) applies to abstention. It has two parts: permissive abstention under § 1334(c)(1) and mandatory abstention under § 1334(c)(2)." *Palltronics, Inc. v. PALIoT Solutions, Inc.* (*In re Lightning Technologies, Inc.*), 647 B.R. 76, 99 (Bankr. E.D. Mich. 2022).

Section 1334(c)(2) governs mandatory abstention, and states:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). Section 1334(c)(1) governs permissive abstention, and states:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under

---

[27] *Id.*

[28] *Id.* at 8-9.

7

title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

### A. Mandatory abstention

For the following reasons, the Court concludes that it must abstain from hearing the State Court Lawsuit, under 28 U.S.C. § 1334(c)(2).

"[F]or mandatory abstention to apply to a particular proceeding, there must be a timely motion by a party to that proceeding, and the proceeding must: (1) be based on a state law claim or cause of action; (2) lack a federal jurisdictional basis absent the bankruptcy; (3) be commenced in a state forum of appropriate jurisdiction; (4) be capable of timely adjudication; and (5) be a non-core proceeding." *Lindsey v. Dow Chemical Co.* (*In re Dow Corning Corp.*), 113 F.3d 565, 570 (6th Cir. 1997). All of these requirements are met in this case.

**First,** the Motion is "timely." It was filed less than a month after the Defendants commenced this adversary proceeding by filing their notice of removal.

**Second**, although, as stated above, Hoffman did not explicitly label the causes of action in his state court complaint, it is clear, based on the facts alleged in the state court complaint, that the claims Hoffman asserts against the Defendants are all state law claims. Hoffman argues in his brief that "the Plaintiff's claims are contractual and arise under state law."[29] It appears from this argument that in the State Court Lawsuit, Hoffman seeks relief based on a breach of contract theory. Other possible causes of action, based on the facts alleged in the State Court Lawsuit, could include a claim seeking an accounting, and a claim based on unjust enrichment, which are equitable claims under Michigan common law. *See Macey v. Archdiocese of Detroit Priests'*

---

[29] Defs.' Br. in Resp. to Pl.'s Mot. (Docket # 29) at 4 first ¶ 12.

*Pension Plan, Inc.*, No. 318617, 2015 WL 1214589, at *2 (Mich. Ct. App. Mar. 17, 2015) ("An accounting is an equitable remedy under the common law. *Basinger v. Provident Life & Accident Ins. Co.*, 67 Mich.App 1, 6; 239 NW2d 735 (1976). The purpose of ordering an accounting is to determine the amount due to a party. *Id."*); *AFT Michigan v. Michigan*, 846 N.W.2d 583, 599 (Mich. Ct. App. 2015) (citations omitted) ("Unjust enrichment is an equitable doctrine. It is the equitable counterpart of a legal claim for breach of contract.").

Hoffman's allegations regarding the wrongful detention of his property by the Defendants possibly might support a claim for common law conversion or statutory conversion under Michigan law, *see generally Aroma Wines & Equip, Inc. v. Columbian Distribution Servs., Inc.*, 871 N.W.2d 136, 139 (Mich. 2015) (discussing both common law and statutory conversion under Michigan law), or a claim for recovery of property under Mich. Comp. Laws Ann. § 600.2920(1) ("A civil action may be brought to recover possession of any goods or chattels which have been unlawfully taken or unlawfully detained and to recover damages sustained by the unlawful taking or unlawful detention, subject to the following conditions . . . .").

Regardless of which of these types of claims Hoffman intends or intended to pursue in his State Court Lawsuit, it is clear that all of these claims arise purely under Michigan law, as required by § 1334(c)(2).

**Third**, all of the possible claims Hoffman has against the Defendants in the civil State Court Lawsuit are non-core claims. That is, they are "related to" Ondrajka's pending Chapter 13 bankruptcy case, Case No. 24-40035, but none of the possible claims is a proceeding "arising under title 11 or arising in a case under title 11." This Court previously has explained what these terms mean:

Under 28 U.S.C. §§ 1334(b), this Court has "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11. This Court has previously discussed what "arising under title 11" means; what "arising in . . . cases under title 11" means; and what "related to cases under title 11" means.

> "The phrase 'arising under title 11' describes those proceedings that involve a cause of action created or determined by a statutory provision of title 11, and 'arising in' proceedings are those that, by their very nature, could arise only in bankruptcy cases." *Bliss Technologies, Inc. v. HMI Indus., Inc.* (*In re Bliss Technologies, Inc.*), 307 B.R. 598, 602 (Bankr. E.D. Mich. 2004) (quoting [*Mich. Emp. Sec. Comm'n v. Wolverine Radio Co., Inc.* (*In re Wolverine Radio Co., Inc.*), 930 F.2d 1132, 1144 (6th Cir. 1991))]. These two categories of civil proceedings are "core" proceedings within the meaning of 28 U.S.C. §§ 157(b)(1) and 157(b)(2). *Id.*

*Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009) (footnotes omitted). As for the category of "related to cases under title 11," this Court has stated as follows:

> The Sixth Circuit has adopted the test articulated in *Pacor, Inc. v. Higgins* (*In re Pacor, Inc.*), 743 F.2d 984, 994 (3d Cir. 1984), for determining "related to" jurisdiction:
>
>> "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is *whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or

10

> > negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."
>
> *Wolverine Radio*, 930 F.2d at 1142 (emphasis in original)(quoting *Pacor, Inc. v. Higgins* (*In re Pacor, Inc*.), 743 F.2d 984, 994 (3d Cir. 1984)(emphasis in original)); *see also Lindsey v. O'Brien, Tanski, Tanzer and Young Health Care Providers of Connecticut* (*In re Dow Corning Corp*.), 86 F.3d 482, 489, 490 (6th Cir. 1996). . . . Proceedings "related to" the bankruptcy case include "more than simple proceedings involving the property of the debtor or the estate." *Celotex Corp. v. Edwards*, 514 U.S.[300,] 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 [(1995)]. And such "related to" proceedings include even "suits between third parties which have an effect on the bankruptcy estate." *Id.* at 308 n.5, 115 S.Ct. 1493. But the Sixth Circuit has cautioned against finding "related to" jurisdiction in "situations . . . where [there is] an extremely tenuous connection to the estate[.]" *See Wolverine Radio*, 930 F.2d at 1142.
>
> *Id.* at 28.

*Baum v. Baum* (*In re Baum*), 638 B.R. 748, 752 (Bankr. E.D. Mich. 2022) (italics in original).

None of Hoffman's possible causes of action fit within the category of a proceeding "arising under tittle 11," because none of the possible claims involve a cause of action "created or determined by a statutory provision of title 11." Rather, the claims are all created and determined by Michigan law.

Nor do any of the Hoffman's state law claims fit within the category of a proceeding "arising in [a] case[ ] under title 11," because none of the claims "are those that, by their very nature, could arise only in bankruptcy cases." Indeed, all of Hoffman's state law claims arose long before Ondrajka filed bankruptcy, not in Ondrajka's bankruptcy case.

11

Ondrajka's stated defense to Hoffman's claim for return of his personal property also is based on Michigan law. As noted above, Ondrajka argues that he has a lien on certain property that Hoffman seeks to recover, under Mich. Comp. Laws § 259.205a.

The Defendants argue that this adversary proceeding is a "core" proceeding under 28 U.S.C. § 157(b)(2)(B), because it concerns "the allowance or disallowance of claims against the bankruptcy estate." That is incorrect. Hoffman has not filed a proof of claim in Ondrajka's bankruptcy case.[30] This adversary proceeding therefore does not implicate the bankruptcy claim allowance process, and is not "core" under 28 U.S.C. § 157(b)(2)(B). *See Beneficial Nat'l Bank USA v. Best Reception Sys., Inc.* (*In re Best Reception Sys., Inc.*), 220 B.R. 932, 949–50 (Bankr. E.D. Tenn. 1998) (footnote omitted) (citations omitted) (emphasis added) (explaining that "the general rule [is] an action commenced against the Debtor by a party who filed a proof of claim in the Debtor's case is a core proceeding so long as the claim and the action share the same basis for liability" and that "[a ]corollary to this rule is the principle of law that **where a party brings an action against the Debtor without filing a proof of claim, the action is not a core proceeding under the authority of 28 U.S.C.A. § 157(b)(2)(B)**").

Tellingly, the Defendants admitted in the "Report of Parties' Rule 26(f) Conference," filed on February 20, 2024, that "[t]his is a non-core proceeding otherwise related to the bankruptcy case."[31] The Defendants were correct in making that admission.

---

[30] Nor has Hoffman filed a nondischargeability action in this Court against Ondrajka, seeking a judgment on a debt and a determination that the debt is nondischargeable under 11 U.S.C. § 523(a). That distinguishes this case from *Atassi v. McLaren* (*In re McLaren*), 990 F.2d 850, 853 (6th Cir. 1993), cited by the Defendants. *See also Beneficial Nat'l Bank USA v. Best Reception Sys., Inc.*, 220 B.R. at 946, nn. 18, 20 (discussing *McLaren*).

[31] Docket # 30 at 3-4 ¶ (3)(f).

Hoffman's claim(s) in the State Court Lawsuit fit only within the category of "related to [a] case[ ] under title 11." They fit into that category because "the outcome" of Hoffman's state law claims "could conceivably have [an] effect on the estate being administered in bankruptcy." To the extent that the state court determines that the Ondrajka has a lien on certain property of Hoffman, that lien interest is property of the bankruptcy estate, and to the extent that the state court determines that Ondrajka is owed money on account of services he performed for Hoffman, that could increase the property of the bankruptcy estate in the case. The outcome of the State Court lawsuit also could alter the Debtor's rights and liabilities. For example, the state court could determine that Ondrajka has no valid lien on the property at issue, and/or it could determine that Ondrajka owes a debt to Hoffman.

The Defendants argue that abstention is not permitted, in part, because "the bankruptcy court has exclusive jurisdiction of all of the debtor's property, wherever located."[32] This, of course, is what 28 U.S.C. § 1334(e)(1) says. But this does not prevent abstention. Rather, the abstention provisions, which mandate abstention in certain circumstances, and which broadly permit abstention in other circumstances, are located in the very same statutory section as § 1334(e)(1). From this alone it is clear that § 1334(e)(1) does not preclude abstention. And the wording of the permissive abstention provision, 28 U.S.C. § 1334(c)(1), makes this point even clearer, when it says that "**nothing in this section** prevents a district court" from abstaining (emphasis added).

The Defendants cite a decision of the Tenth Circuit Bankruptcy Appellate Panel, to argue as follows:

---

[32] Defs'. Br. (Docket # 29) at 4.

13

24-04004-tjt    Doc 33    Filed 03/01/24    Entered 03/01/24 13:39:14    Page 13 of 19

> In the matter of *Hafen v. Adams* (*In re Hafen*), 616 B.R. 570 (B.A.P 10th Cir. 2020), the bankruptcy appellate panel held that the bankruptcy court is the only court with subject matter jurisdiction to decide whether an asset is property of a debtor's bankruptcy estate.[33]

This point does not mean that abstention is precluded. That was explained by a later decision of the same bankruptcy appellate panel that decided the *Hafen* case, in distinguishing *Hafen*:

> Although the Bankruptcy Court has exclusive jurisdiction over property of the estate, wherever located, **the Bankruptcy Court**, nevertheless, **is not required to hear all proceedings that may affect property of the bankruptcy estate**. McIntyre relies on . . . *In re Hafen* [616 B.R. 570 (10th Cir. BAP 2020)] to argue the Bankruptcy Court had exclusive jurisdiction over the State Law Claims . . . . We disagree.
>
> [A]lthough *Hafen* concluded the bankruptcy court is the only court with subject matter jurisdiction to determine whether a claim is property of the estate, the Adversary Proceeding at issue here is not such a proceeding.
>
> In *Hafen*, whether the bankruptcy court was the proper forum to adjudicate the claims was not at issue; rather, the issue was whether claims belonged to the debtor's investors or the bankruptcy estate. In fact, *Hafen* stands for the conclusion that **bankruptcy courts are** the only courts with subject matter jurisdiction to determine whether a claim is property of the estate, but **not the only courts with subject matter jurisdiction to liquidate a claim owned by a bankruptcy estate**.
>
> In this appeal, . . . [t[he issue is whether §1334(e)(1) mandates the Bankruptcy Court serve as the forum to adjudicate the State Law Claims. Just because the Bankruptcy Court had, and has, exclusive jurisdiction of property of McIntyre's bankruptcy estate under § 1334(e) (1) does not mean it had, and has, exclusive jurisdiction of civil proceedings concerning property of the bankruptcy estate. While § 1334(e)(1) establishes *in rem* jurisdiction of bankruptcy courts over property of the bankruptcy estate, **it does not "negate the provisions of 28 U.S.C. § 1334(b) that grant the bankruptcy**

---

[33] *Id.*

> courts original but not exclusive jurisdiction of civil
> proceedings 'arising under title 11, or arising in or related to
> cases under title 11.'"
>
> . . . [W]e conclude § 1334(e)(1) does not mandate the
> Bankruptcy Court hear the State Law Claims to the exclusion
> of the state court.

*McIntyre v. Fangman* (*In re McIntyre*), No. CO-22-003, 2022 WL 18000098, at *7-9 (B.A.P. 10th Cir. December 30, 2022) (footnotes omitted) (emphasis added). The Court agrees with the foregoing passage in the *McIntyre* case.

The state court has concurrent jurisdiction, with this Court, to adjudicate Hoffman's claims in the State Court Lawsuit. The state court, in adjudicating Hoffman's claims, will be determining only matters governed by state law, including the amount of debt, if any, that the Defendants owe to Hoffman, and whether the Debtor Odrajka or the Defendant Flyboyz, or both, have a lien under state law on any of Hoffman's property. It is well-settled that "[p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55, (1979). State law claims can be, and often are, adjudicated in state court even after one of the parties has filed for bankruptcy relief. It is not unusual for bankruptcy courts to permit this. For example, this Court has abstained, and/or granted stay relief, to permit the parties to litigate in state court many times. *See, e.g.*, *Baum v. Baum* (*In re Baum*), 638 B.R. 748, 751-54 (Bankr. E.D. Mich. 2022) (remanding removed state law claims to state court, based on mandatory abstention); *Abdoun Estate Holdings, LLC v. Abdulnoor* (*In re Abdoun Estate Holdings, LLC*), 635 B.R. 145, 146-47 (Bankr. E.D. Mich. 2021) (same); *In re Cattron*, 647 B.R. 186, 189-92

(Bankr. E.D Mich. 2022) (granting relief from stay in a Chapter 13 case to permit creditor and the debtor to litigate state law claims in a pending state court action); *In re Blume*, 582 B.R. 178, 180 (Bankr. E.D. Mich. 2017) (same); *Palltronics, Inc. v. PALIoT Solutions, Inc.* (*In re Lightning Technologies, Inc.*), 647 B.R. 76, 99 (Bankr. E.D. Mich. 2022) (abstaining, based on permissive abstention, regarding state law and non-bankruptcy federal law claims brought in adversary proceeding, to permit the claims to be litigated in a state court or a non-bankruptcy federal court); *Cowan v. Ladosenszky* (*In re Ladosenszky*), 617 B.R. 275, 278 (Bankr. E.D. Mich. 2020) (abstaining, based on permissive abstention, in favor of state court determining the amount of any divorce-related debt owing by the Chapter 7 debtor).

**Fourth,** Hoffman's claims "could not have been commenced in a court of the United States absent jurisdiction under" 28 U.S.C. § 1334, within the meaning of § 1334(c)(2). The Defendants do not point to any basis for federal court jurisdiction other than § 1334, the bankruptcy jurisdiction statute. There is none.

**Fifth,** Hoffman's claims in the State Court Lawsuit were commenced before the Debtor filed for bankruptcy and before those claims were removed.

**Sixth,** Hoffman's claims "can be timely adjudicated, in a State forum of appropriate jurisdiction," within the meaning of § 1334(c)(2). As noted earlier in this Opinion, in the State Court Lawsuit, the final settlement conference was scheduled for February 26, 2024, and a jury trial was scheduled for February 29, 2024. The Defendants dispute that Hoffman's claims can be timely adjudicated in a state court forum, apparently based only on the argument that this Court has exclusive jurisdiction over property of the estate. But that does not prevent the state court from adjudicating Hoffman's claims, as discussed above.

16

For these reasons, mandatory abstention applies under § 1334(c)(2), and this Court must abstain from deciding Hoffman's claims. As a result, a remand to the state court is required.

### B. Permissive abstention

> As is clear from its wording, § 1334(c)(1) permits this Court to abstain from hearing a proceeding over which the Court has subject matter jurisdiction, based on any one or more of the following grounds: (1) "in the interest of justice;" or (2) "in the interest of comity with State courts;" or (3) "in the interest of . . . respect for State law."

*Palltronics, Inc. v. PALIoT Solutions, Inc.* (*In re Lightning Technologies, Inc.*), 647 B.R. 76, 99-100 (Bankr. E.D. Mich., Nov. 21, 2022). In considering whether to abstain, courts consider a non-exclusive list of 13 factors:

> The decision to abstain or not is aided by an analysis of all relevant factors, including a non-exclusive list of thirteen (13) decisional criteria set forth . . . in *Nationwide Roofing & Sheet Metal, Inc. v. Cincinnati Ins. Co.* (*In re Nationwide Roofing & Sheet Metal, Inc.*), 130 B.R. 768 (Bankr.S.D.Ohio 1991). Specifically, the following factors were identified: 1) the effect or lack of effect on the efficient administration of the estate if a court abstains; 2) the extent to which state law issues predominate over bankruptcy issues; 3) the difficulty or unsettled nature of the applicable state law; 4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; 5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; 6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; 7) the substance rather than form of an asserted "core" proceeding; 8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; 9) the burden of this court's docket; 10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; 11) the existence of a right to a jury trial; 12) the presence in the proceeding of nondebtor parties; and, 13) any unusual or other significant factors. *Nationwide*, 130 B.R. at 780 (citations omitted).
>
> This non-exclusive list does not require a mechanical application

> of each factor, but provides a starting point for a permissive abstention analysis.

*Palltronics, Inc. v. PALIoT Solutions, Inc.* (*In re Lightning Technologies, Inc.*), 647 B.R. 76, 101 (Bankr. E.D. Mich., 2022) (quoting *Brothers v. Tremaine* (*In re Tremaine*), 188 B.R. 380, 384–85 (Bankr. S.D. Ohio 1995)).

The Court has considered all of the relevant circumstances and factors, and finds that they weigh heavily in favor of the Court exercising its discretion to abstain, "in the interest of justice;" "in the interest of comity with" the Sanilac County Circuit Court; and "in the interest of . . . respect for" Michigan law. Of the 13 factors listed above, factor nos. 1, 2, 5, 7, 9, 10, 11, and 12 all weigh in favor of abstention, and none of the other factors weigh against abstention. Abstention is appropriate for the following reasons.

- There will be no adverse effect on the efficient administration of the bankruptcy estate if this Court abstains.

- Any possible causes of action that Hoffman has, based on his allegations in the State Court Lawsuit, or that the Defendants may have against Hoffman, arise purely under Michigan law.

- But for the filing of Ondrajka's bankruptcy case and removal of the State Court Lawsuit, this Court would not have jurisdiction over the claims in the State Court Lawsuit.

- This Court has only "related to" jurisdiction over the claims in the State Court Lawsuit — *i.e.*, such claims are non-core.

- The removal of the State Court Lawsuit appears, at least, to have been an instance of forum shopping by the Debtor that this Court should not allow. The Debtor's filing of the voluntary bankruptcy petition and removal of the State Court Lawsuit occurred on the eve of trial in the state court — *i.e.*, in the month before the case was scheduled for a jury trial in the state court — after the case had been pending for almost two and one half years.

- The parties in the State Court Lawsuit have a right to a jury trial.

- One of the two Defendants – Flyboyz – is not a debtor in bankruptcy.

- Litigating the claims in the State Court Lawsuit in this Court, rather than the state court, would pose an unnecessary and unjustified burden on this Court's docket, particularly after the Defendants and Hoffman have been litigating the claims in the State Court Lawsuit for almost two and one half years, the state court has already expended time and resources on the case, and the state court is now ready to conduct a jury trial.

For these reasons, even if the requirements of mandatory abstention did not apply, the Court would exercise its discretion to abstain on permissive abstention grounds.

### C. Remand, and cause for stay relief

Because this Court will abstain, a remand to the state court is necessary. In addition, the Court finds that there is "cause," under 11 U.S.C. § 362(d)(1), to grant limited relief from the automatic stay, to permit the parties to litigate the State Court Lawsuit to conclusion, including any appeals. Stay relief will not be granted at this time to permit the Plaintiff Hoffman to take any action to collect on any debt arising from any judgment against the Debtor that may be entered by the Sanilac County Circuit Court.

### IV. Conclusion

For the reasons stated in this Opinion, the Court will enter an order (1) abstaining from hearing this adversary proceeding, on both mandatory and permissive abstention grounds; (2) remanding this case back to the Sanilac County Circuit Court from whence it was removed; and (3) granting the limited relief from stay described above.

**Signed on March 1, 2024**



/s/ Thomas J. Tucker
**Thomas J. Tucker**
**United States Bankruptcy Judge**